Good morning, Your Honors. I was here on Tuesday, so I don't see any reason to repeat everything that you've already heard about most of these issues. We appreciate that very much. We were about to ask you, what would the significant difference be between the Wells Fargo case and this one? I don't believe there was any significant difference. In Lima, there was a notice that said they were going to convey it by quitclaim, which has been complained about. But in this particular instance, they ended up conveying it by a limited warranty deed. So their advertisement, their notice, was certainly deceptive in that respect. Also, there was a six-month continuance. But the principles, it seems to me, are absolutely the same. The other thing that I would suggest is that, as the Court noted on Tuesday, rather than trying to find a crystal ball to predict what the Hawaii Supreme Court is going to do very soon with regard to these cases, it would seem to me to be much more sensible to wait and find out what they actually say. This is the Hungate. Well, Hungate, and Your Honor also asked about the other case, which is Kandauer Capital Corporation versus Matayoshi. Matayoshi, right. And that was a case where it first went to the Intermediate Court of Appeals, which upheld the dismissal of the complaint, which had done by a state judge over on Kauai. By the way, the facts there were essentially simply that they advertised, or they held the sale, the lease of property on Kauai. The Intermediate Court issued a summary disposition order sustaining, you know, the decision of the Circuit Court judge on Kauai. And the Supreme Court granted cert. And obviously, I can't get within the minds of the justices, but I will note that the application for cert made the first and primary point that the issue was the continuing vitality of Ulrich and Silva. And that's going to be the issue. So that being so, I would propose to reserve the rest of my time, should I need it. And thank you very much for your attention. I may do so, counsel. Before I sit down, counsel, I asked this question of counsel on Tuesday, but it may have some bearing here, particularly in regards to the attorney aspect of this. In Hawaii practice, when the Hawaii Supreme Court grants cert, do they use that terminology, the grant certiorari, or is it something else? Yes, they do. Actually, it's a cert court now. Okay. All the first appeals go to Intermediate Court of Appeals, and the Supreme Court has very limited original jurisdiction. It's a cert court. Okay. When they grant cert, do they specify the question or questions that they will focus on in the application for cert, which raises the questions, and those are the ones they'll decide. I had a recent experience where having granted cert and agreed with me on the issues on which we'd sought cert, they then sent it back down to the Intermediate Court of Appeals to finish it up. So yes, it's limited. Okay, but I mean, for example, in the U.S. Supreme Court, they'll usually say, you know, we grant cert on these questions. Ironically, they may have nothing to do with the case, but they will say that's what they're going to review. And I understand your answer to be that in this case, they don't specifically in high variable lay out what they're going to decide, but they simply, whatever the petition is that they are granting, whatever is encompassed within that petition is fair game for the court. Is that correct? That's been my experience, and that's my understanding. Now, of course, should they decide to decide something else, very little I'd be able to do about it, but that is the practice. Thank you. Mr. Perkin, you're reserving the remainder of your time. I am. Thank you. Very well. We'll hear from the other side. Morning, Your Honors. I'm Bernie Garbutt from Morgan Lewis on behalf of the RMBS trustees. I only have five minutes that I'm splitting with the other counsel, so I listened to the arguments from Wednesday, and I'd like to address five issues that won't be resolved by the Hungate case. You heard one from Wednesday? Boy, that must have been an interesting argument. It actually was quite interesting. I think you mean Tuesday, Counsel. Tuesday. Sorry. Sorry. You're right. So I have five issues that weren't discussed then and won't be resolved by the Hungate decision. The first issue, the most important issue under Iqbal and Twombly, which does apply to this claim, as Judge Smith asked about on Tuesday. In the Giebel case, the auction was only postponed once for three weeks, and it was advertised by Quick Claim Deed. It was sold by Quick Claim Deed, but importantly, it was sold to a third-party bidder, the Chins. So why is that important? Well, it was postponed, and yet a third-party bidder attended. It was advertised by Quick Claim, and yet a chilling effect by both of the practices that the plaintiffs complained about. Interestingly, also, Giebel refused to vacate the property, and the third-party bidder, the Chins, had to bring an injectment action to get her to vacate the property. If the trustee had given a limited warranty deed under those circumstances, it would have breached the covenants of that deed. Counsel, your comment raises, in my mind, a question I suspect I know your answer. I'm not sure about the other side. It sounds like these cases are very much sui generis. There would be difficulty finding some commonality amongst all these, like in a class action sense. Is that correct? I think generally that's correct, Your Honor. Interestingly, again, this is brought as a class action, so I think it's going to be very difficult for them to get their class certified, but I disagree with counsel. The facts of these cases in front of Your Honors today are very different than the Bald case. As I said, in Giebel, there was only one postponement. It was only three weeks, and a third-party bidder showed up, so there was no chilling effect there. In Lima, there was no postponement at all. Ultimately, from our perspective, if we're going UDAP, we're talking about something that's an unfair matter, and that's decided on a case-by-case, fact-by-fact basis. Is that correct? Well, I think it's decided based on what's actually been alleged in the complaint. Of course, yeah. And here, we don't think under Iqbal and Twombly, or even in the prior regime, we don't think that they've alleged enough to state a UDAP claim, even if the Hawaii Supreme Court says that there is some duty owed by a mortgagee to a mortgagor. Why would Iqbal and Twombly in 9A be a factor if you're dealing with something quite general like unfair? Now, if you're talking about fraud, I get you, but what is there in the Supreme Court's jurisprudence or in the federal rules of civil procedure that would require someone to plead with the kind of specificity that Iqbal and Twombly require if you're just alleging an case in federal court, Rule 8 applies, and the Supreme Court says under Iqbal and Twombly that you have to allege facts and not just conclusions. So for one example that it would make a difference here, because the law, whatever that law is, needs to be applied to the facts that are alleged in the complaint. Here, they claim they were damaged, but they don't allege anything in the complaint about the market value of their home at the time that the foreclosure sale happened. So they claim that there was a chill on bidding resulting in lower prices, but they don't have anything in the complaint to back that up. They also don't allege what their indebtedness was in the complaint. So it's feasible that a foreclosure auction could take place at a price that's below market, yet these plaintiffs are not even damaged unless, you know, that market value was above the amount of their indebtedness. So that's one example of why the allegations in the complaint need to be able to, you know, in this case federal pleading law, that those allegations are essential to show plausibility. Yes, I do, to show that they've actually been damaged. One of the elements of a UDAP claim is that they've been damaged, and there's nothing in this complaint as currently alleged to indicate that they've been damaged at all. I think Your Honor asked questions on Tuesday about deficiency claims and the like. There's no deficiency claim being alleged here, and I'm sure if there had been, Plaintiffs' Counsel would have brought that to this panel's attention. I got one of the five issues. Can you give me the rest of your laundry list? Sure. I wanted to talk a little bit about the quitclaim deed. The Ulrich case that the plaintiffs rely upon was superseded by the UCC in Hawaii. It's 9-610, and that says that when collateral is sold to satisfy a debt, it only requires that it be sold in a commercially reasonable manner. And under 610E, it says that the secured party that's selling that collateral can specifically disclaim any warranties. And the reason that's important in a situation like this is exactly what happened with the Chins. The Chins won the property at the auction, and yet they had to turn around and evict Guibo, one of the plaintiffs in this case. And if we had given them a limited warranty deed, we would have covenanted in that deed. I think one of the other points was the damages, which I think I've sufficiently covered. My fourth point was an issue that Judge Smith also brought up, and I think Judge Tallman, too, the issue of motive. My clients, Deutsche Bank National Trust Company and U.S. Bank, are RMBS trustees. And I think your honors have sat on some panels, Cervantes, etc., talking about the RMBS trustee. There's no motive to do the things that plaintiffs are alleging in their complaint. There's no motive for an RMBS trustee to chill bidding. Like any other mortgagee, our motive is to try to maximize the sales price at a foreclosure auction. Because we're not in the business of trying to manage property or speculate. We want, as RMBS trustees, we want borrowers to pay their debts when they become due so that money can be passed on to the certificate holders in the trust. And I would just say the last point that I was going to cover with respect to postponement, which I know will be addressed by Hungate. The trustees don't feel that anyone here did anything wrong, and we don't agree that you need to publish if there's a postponement. But plaintiffs have made an allegation in their brief that says that whether or not postponements were I think they make a point that three out of the five law firms that did foreclosures in Hawaii did publish postponements. And I think what that shows is that it's not the trustees that are making the decision whether to postpone or not. It's the law firms that are handling the foreclosure. And again, we don't think that the law requires that the postponement be published. But in any event, plaintiffs have conceded that these are practices of the various law firms that handle foreclosures and not the trustee. So you're down to about two and a half minutes for your co-counsel. Well, I hope your honors will indulge him a little bit more than that. Thank you. Christopher Gooden for the Rosen Defendants. At this point, everyone agrees that the proper course is for the court to defer decision making pending the decision in Hungate. Now, while there are some differences between the Hungate case and these federal cases, and I'd like to talk about just one in particular today, the Hungate case does involve a variation of the postponement claim, as well as the three attorney-specific issues relating to trader commerce, consumer standing, and common law rules limiting liabilities. All of those issues are before the Hawaii Supreme Court. Now, coming to the one significant difference that I'd just like to talk about among many, the postponement claim. The postponement claim was alleged differently in these cases, these federal complaints. So starting out with the commonality, what they have in common, all of these complaints allege that the mortgage terms required postponement by publication. But the Hungate complaint goes further. It alleges the number of postponements, and on that basis, alleges a UDAP claim for, quote, repeated postponements. And if the court is interested, that's at paragraphs 46 and 54 of the Hungate complaint, which we submitted as part of our request for judicial notice. 46 and 54. Yes, Your Honor. And so these federal complaints don't include these repeated postponement allegations. And so to me, that just begs the question, why the these federal complaints are styled as class actions. And class actions, as Judge Smith pointed out, you know, it can't be sui generis. You can't certify a class if it's individualized and fact-specific. And this postponement, postponing multiple times issue is precisely that type of inquiry, essentially asking... The question's not before us now. There's been no ruling by the district court as to whether or not to certify the class. No, Your Honor. I'm just trying to explain why there might be a difference in the way that the two complaints, or I should say the federal complaints here and the Hungate complaint, was styled, why it was different. And Hungate is not a class action. So I think that explains the difference, why the federal complaint is more limited in its allegation. And this distinction in pleading could ultimately make a difference. Specifically, while we believe... It could make a difference in whether or not the district court should certify a class. And as I say, that issue is not presently before us, but I'm not... Maybe I'm missing the point that you're trying to make here. The point I'm trying to make, Your Honor, is that the scope of the postponement claim in these federal cases is more narrow than it is in the Hungate case. Narrow or simply unarticulated? Well, it's what's alleged, Your Honor. That's what the district court ruled on, was the allegations in the complaint. And correct me if I'm wrong, but didn't the district court dismiss or leave to amend, but the plaintiffs chose not to amend? That is correct, Your Honor. They had an opportunity to amend. And so if they wanted to assert a broader postponement claim at that point, they could have. And in fact, the attorneys who represent Hungate are the same attorneys here. And so just one final point. I see I'm past my time, but... You are past your time, but go... Just one point, Your Honor. It's your point, please, counsel. Thank you. We believe the Hawaii Supreme Court should affirm outright, but it's possible that the Hawaii Supreme Court could conclude that the mortgage terms don't require postponement. And that's the issue that's presented here in the briefs. You mean publication? I'm sorry, don't require publication. Excuse me, Your Honor. But that this repeated postponement issue creates a factual question. And so in that situation, given the way that the pleading, that the postponement claim was pled in these federal complaints, the district court's decision dismissing the postponement claim should be affirmed. Thank you, counsel. Can I just ask one other question? Yes, Your Honor. Putting aside UDEP for a minute, if, for whatever reason, we get into the common law, is it your position that a decision about whether there is liability on the part of the lawyers should be analyzed under the Blair v. Ng factors? Well... If, if we get to common law. We don't believe that Blair... Blair v. Ng was limited in the Hawaii Supreme Court case of Busher v. Boning to the estate planning context. And on top of that, if you did apply the Blair v. Ng factors, as Judge Nacino did in one of those cases... I know they talked about that that was an estate planning function, and we had Lucas v. Hamm in California, all that sort of thing. But the reality is, did they say that Blair couldn't be used for anything else? Well, they didn't, Your Honor. They didn't say it couldn't be used for anything else, but they said that case was in an estate planning context and they didn't go on to analyze the factors in Busher v. Boning, they just, they cut it at that. And in fact... So you're saying that under no circumstances do the six factors in Blair play any role whatsoever in our analysis of whether the lawyers have liability? We're saying that that case has been... Our position is that it's been limited, but that even if you were to apply it, the common law rule limiting attorney liability would preclude these claims, particularly because it would create a conflict of interest between the attorney and his client. Thank you. Thank you, counsel. Thank you, Your Honor. Mr. Perkin, you have some reserve time. Thank you. And I will use at least some of it. First point, the Iqbal point, we have a 20 page complaint here. It's scarcely sketchy, and from what Mr. Garbud is talking about, we have to go back to code pleading. We'd have to plead all the evidence that was relevant to the case. I think that... You have to show that the claim is plausible, right? Well, I think that there's enough there. And it's your perspective that what was pled is sufficient to show that the claim is plausible. I believe so, Your Honor. And of course, since I was one of the ones who drafted the complaint, I guess I have a stake in that. But that also goes to the failure to amend, to take the district court up on its offer. The judge didn't dismiss the case on the grounds that the pleading was in any way defective. She dismissed the case on the grounds that there was no cause of action based upon the foreclosure statute. And therefore, there would be no point to amend, we just have to tackle that issue. Now, with regard to... Well, if the judge had said, you're not meeting Inc. Paul Twombly, you'd have said more. You didn't think it was necessary because it would have been futile to amend since there was no cause of action from the judge's perspective. Exactly, Your Honor. I mean, if we... If the ruling had been that the pleading was defective, we would have driven mightily to remedy any perceived defects found by the case. And with regard to... Very quickly, no Blair versioning hasn't been expressly limited to the estate planning context. That is, as pointed out, that is an area where attorney liability has been found elsewhere. It's a more common area, but this is an evolving area of the law. And with regard to this trustee business, Mr. Garbutt, I think, has gone a long way astray from the issues with regard to a motion to dismiss in educating us all about how trustees operate and what their motivations are. He does make a good point about the motive issue, though. That was a concern that I had in reviewing all of your briefing because it does seem to me to resonate that the trustee in this instance has every incentive to maximize the amount of the bid and presumably would not engage in actions that it feels might result in a lower bid. I would suggest, to Your Honor, that the trustee has the aim of maximizing the return, not the bid. And if, for example, by... I see where that's inconsistent, though. Well, if I could discourage bidding, snap it up on a credit bid well below its market value and turn around and flip it for a great deal more, then... But where do I find that in your complaint? The problem is we don't know what the fair market value was for most of these properties at the time. And if history is any teacher, a lot of these activities occurred when the real estate market had taken a terrible nosedive. So if you're asking me to speculate, I think I'm gonna come out differently than from where you're coming out. Well, I think that the point is, at this point on a motion to dismiss, if we have pled it adequately, the rest of that should be left for the discovery process and for the development of the evidence. But your argument that it's not plausible to believe that... Or that it is plausible to believe that the trustee acted in the way that you allege that they have acted. And that's, I guess, where I'm tripping up on your argument, because I think it's more plausible that the trustee would wanna try and maximize what it gets from the sale of the property. I guess I'm kind of wondering, because quite often there are alternatives. And when we talk more plausible, less plausible. If you have to plead something that a judge on first glance will find to be the most plausible, that takes us even farther down the road. I think it is plausible to believe that a trustee, and we all know that they're compensated based upon results, their returns, proportion of the trust estate, that they have a motive, a financial motive to maximize, as I said, the return that's coming out of a particular foreclosure, rather than... What is the difference? I'm not sure I follow that argument. Okay. Maximizing the bid, if the property is auctioned to a third party, the most that the mortgagee can get is its debt plus costs. Anything else is the property of the mortgagor. However, if instead of having a third party sale, there's a credit bid, it goes to the mortgagee for less than the amount of the debt, well, that they can turn around and sell it for whatever price they want, and no one else has a claim. But where do I find those details in your complaint? The problem is, I don't know what the fair market value was, I don't know what the amount of the bid was, I don't know what the costs of the foreclosure action were, I don't know what the outstanding indebtedness was. To me, there are more questions than answers. Well, and Your Honor, frankly, faced with that, I would say that if those details are necessary, then that's exactly what I was talking about. If it's a pleading problem, then I think that we should be giving... The district court gave you the opportunity, and your response to that is, well, I didn't really realize based on the way that she ruled that she was asking me for specific details of the nature that you and I have just been talking about. But, I mean, you're the one who's bringing the lawsuit, and the district court is saying, I'm not sure you've got a cause of action here, but I'm gonna give you leave to amend to convince me otherwise, and you say, I think it would be futile to make any further amendments to my complaint. Your Honor, what the district court said was, you do not have a cause of action. Not that you need to flesh it out, or I think that there's something more that I would need to be shown. She just said flat out, okay, they complied with the part one of the foreclosure statute, and that means they're okay. What do you think the district court was contemplating when it gave you leave to amend? I mean, I hear what you're saying. If the district court is saying under no stretch of the imagination, do you have a viable cause of action, then you're done, and then you're up at the Court of Appeals trying to argue the contrary. But I'm curious as to why she gave you leave to amend. It was my understanding, it may have been wrong, but I believe even by the phrasing of her grant, it was if we had other claims that we could bring. And frankly, at that point, I didn't see any other claims that we could bring. I'll just be quick. Isn't your problem here that the more details you put in your complaint, the less likely that you can get a class action? Because then more plausibility by detail, and you've got sui generis issues, it affects commonality. Did that play into your thinking? Well, actually, we haven't... We've all thought about it, because obviously, we brought it as a putative class action. But as we get farther into it, there have been cases that have gone to resolution in the state court, not as class actions, where the evidence provided sufficient damages, etc., to make it feasible. We don't know exactly where discovery will take us, where fleshing this out will take us. But I think we have... And I should say, I think the plaintiffs have a right to explore this, and I don't think the case should have been... Sir, very well. Thank you, Counsel. The case just argued will be heard. The court will take a short recess.
judges: O'scannlain, Tallman, Smith